UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――

DAVID D. DANIELS,       )
         )
        Petitioner,    )    Case No. 5:06-cv-140
         )
v.         )    Honorable Paul L. Maloney
         )
KENNETH McKEE,      )
         )    **REPORT AND RECOMMENDATION**
        Respondent.   )
_____)

      This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. §

2254.  Petitioner is serving prison sentences on eleven felony convictions, all arising from his

participation in an armed robbery of a drug house with his co-defendant Terrill Boyles.  After a jury

trial, the Oakland County Circuit Court imposed a mandatory, nonparolable life sentence for first-

degree, felony murder, MICH. COMP. LAWS § 750.316(b); sentences of 20-to-30 years' imprisonment,

on charges of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, conspiracy to

commit armed robbery, MICH. COMP. LAWS § 750.157a, and two counts of armed robbery, MICH.

COMP. LAWS § 750.529; a term of 10-to-15 years for felonious assault, MICH. COMP. LAWS § 750.82

(enhanced for petitioner's status as an habitual offender, fourth offense); and consecutive terms of

two years' imprisonment for each of seven convictions of possession of a firearm during the

commission of a felony, MICH. COMP. LAWS § 750.227b.  On direct review, the Michigan Court of

Appeals vacated petitioner's conviction and sentence on one count of armed robbery and one count

of felony-firearm on double jeopardy grounds and ordered a clerical amendment of the judgment, but affirmed his convictions and sentences on the remaining eleven felonies in all other respects.

On October 2, 2006, petitioner filed a *pro se* application for habeas corpus relief in this court. The petition, read with the required liberality, sets forth four grounds for relief: (a) the evidence was insufficient to support the jury's verdict on charges of first-degree, felony murder of Kevin Stephens and assault with intent to murder Kenneth Hayes, for insufficient evidence to show that petitioner aided and abetted his co-defendant's perpetration of these crimes; (b) petitioner's conviction for possession of a firearm during commission of a felony (count 4) must be vacated because it was inconsistent with the jury's not-guilty verdict on the underlying felony; (c) petitioner's conviction for both first-degree, felony murder and the underlying offense of armed robbery violated the Double Jeopardy Clause; (d) the imposition of consecutive sentences violated state law. This matter has been referred to me for issuance of a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Proceedings in the District Courts. After review of the record, I conclude that the evidence was more than sufficient to convict petitioner on an aiding and abetting theory for crimes committed by his co-defendant, that petitioner's challenge to count 4 on the ground of inconsistency of verdicts does not state a claim for federal habeas corpus relief, and that the errors complained of in grounds 3 and 4 were addressed and remedied by the state Court of Appeals on direct review. I therefore recommend that the habeas corpus petition be denied on its merits.

<u>**Proposed Findings of Fact**</u>

**A.**     **Trial Proceedings**

The state court prosecution arose from the armed robbery of a drug house by petitioner and his co-defendant Terrill Boyles on August 2, 2001, in Pontiac, Michigan.  During the robbery, co-defendant Boyles killed Kevin Stephens and both defendants assaulted the others who were present in the house at the time.  Petitioner was charged in a sixteen-count criminal Information with felony murder, two counts of armed robbery, conspiracy to commit armed robbery, two counts of assault with intent to murder, and felonious assault.  Each of these felony charges was accompanied by a charge that petitioner was in possession of a firearm during the commission of a felony.  Additionally, the Information charged petitioner as an habitual offender, fourth offense, under the Michigan habitual offender law, MICH. COMP. LAWS § 769.12.

Petitioner and his co-defendant were tried before the Oakland County Circuit Court from February 22 through March 1, 2002.[1]  The prosecution called six witnesses (Kenneth Hayes, Aimee Kendrick, Jerean Tidwell, Corey Brown, Kelli Lee, and Kenya Campbell) who were either present at the scene of the crime or saw petitioner that evening.  The prosecution also called Michigan State Police Detective Sergeant Timothy Ketvirtis, Officer Michael Miller, and Sgt. William Ware of the Pontiac Police Department, emergency room physician Dr. Robert May, and deputy medical examiner Bernardo Pacris.  Petitioner and his co-defendant testified in their own defense.

The crimes for which petitioner and co-defendant Terrill Boyles were prosecuted occurred in a house on Kenilworth Street in the City of Pontiac on August 2, 2001.  This was a two-

---

[1] The trial transcript is in six volumes, docket #'s 17 through 22 in this court's record.

-3-

bedroom house with a living room and a kitchen in which Kevin Stephens (age 22) lived alone.  (TT II, 7-9).  At the time of the incident, Kenneth Hayes (age 20), Jerean Tidwell (age 22), and Aimee Kendrick (age 16) were present at the house.  (TT II, 10, 136-37, 160).  The men were watching television in the living room, while Ms. Kendrick was watching a movie in the bedroom by herself. (TT II, 10-11, 100-02).

At about 1:45 a.m., Corey Brown drove up to the house with his girlfriend Kelli Lee. (TT II, 231).  They parked in the driveway, and Brown went inside while Ms. Lee waited in the car. He saw Kevin Stephens, Kenneth Hayes and a man known to him as "Jerean."  (*Id.*).  Brown testified that Boyles, whom he had known since junior high school, arrived at the house alone about five minutes after he did.  (*Id.*, 233).  Stephens addressed Boyles by his nickname, "Hog."  Boyles asked Stephens if he had any weed.  Stephens sold Boyles some marijuana.  (*Id.*, 234).  Boyles then asked if he could go out and get "his boy" out of the car, so that they could come back in and smoke the marijuana.  (*Id.*, 235).  Brown left after about ten minutes.  Boyles walked outside with him.  When Brown went outside, he saw a car parked in front of the house.  (*Id.*, 236).  Mr. Brown testified that Boyles walked to the car and got a second man, who was wearing a black hooded sweatshirt.  Brown could not identify the second man.  (*Id.*, 238).  Boyles and the second man entered the house at around 2:00 a.m.  (*Id.*, 238-39).

Kelli Lee, Brown's girlfriend, testified to the same effect.  She and Brown arrived at the house at about 1:45 a.m.  She waited in the car while Brown went in.  (TT II, 279-80).  During the time that Brown was in the house, she saw a black male enter.  (*Id.*, 280).  The man later walked out of the house to a car parked in front of the neighbor's.  (*Id.*, 281).  Another man got out of the car, and they both went back into the house.  (*Id.*, 283).  She did not identify either man.

The testimony of one of the victims, Kenneth Hayes, established virtually all of the events occurring in the house that evening.  He had arrived at the house about midnight.  (TT II, 10).  Jerean Tidwell, Aimee, and Kevin Stephens were also in the house.  (*Id.*).  Corey Brown arrived alone, followed shortly by co-defendant Terrill Boyles, known to him as "Hog."  (*Id.*, 12-13).  Corey Brown left, followed by Boyles.  (*Id.*, 15).  Hayes testified that Boyles returned to the house accompanied by petitioner, who was known by the nickname "Bones."  (*Id.*, 15-16).  The two men sat on the couch for about ten minutes.  Petitioner then pulled out a gun and said, "Get on the floor."  (*Id.*, 17).  After a couple of seconds, Boyles stood up and pulled a gun.  (*Id.*, 18).

Stephens, Hayes, and Tidwell all complied.  The gunmen asked Stephens and Hayes where the "shit" was.  Hayes testified that he did not know what they were talking about and that he did not know where anything was.  (*Id.*, 19).  Stephens told the men he did not have anything.  Petitioner then took a cell phone and cash from Hayes.  (*Id.*, 20).

Petitioner herded Tidwell and Hayes into the kitchen.  (TT II, 19).  Boyles took Stephens into the bedroom, while petitioner stayed with the other two men in the kitchen.  After a time, petitioner took Hayes and Tidwell back into the living room and made them get down on the floor.  (*Id.*,. 21).  Hayes testified that both petitioner and Boyles hit Stephens in the head, demanding that he produce the marijuana.  (*Id.*, 21-22).

The gunmen forced Hayes, Stephens, and Tidwell into the bedroom where Aimee Kendrick was watching television.  (*Id.*, 22).  Hayes, Tidwell and Ms. Kendrick were all forced into a closet, where they stayed for five minutes.  (*Id.*, 26).  Petitioner, still brandishing a gun, let them out.  (*Id.*, 26-27).  The three hostages were told to get on the bed.  Boyle entered the room with Stephens, who sat on the floor.  The gunmen continued to demand "the shit" for a minute or so.

Boyles then turned off the light and told petitioner to "kill everybody." (*Id.*, 28). The lights came back on, and petitioner shot Stephens in the leg. (*Id.*, 29). This was the first shot fired. (*Id.*, 28).

After petitioner shot Stephens, the gunmen continued their threats to kill everyone if they did not give them the marijuana. (TT II, 30). The men continued to demand marijuana from Stephens, Stephens continued to deny that there was anything in the house. (TT II, 31). Hayes testified that Boyles then shot Stephens in the head. (*Id.*, 31-32).

Boyles pointed his gun at the back of Tidwell's head and shot. (*Id.*, 34). According to Hayes, petitioner was not present in the room when either Stephens or Tidwell were shot. The gunmen then ran out of the house.

Aimee Kendrick, who was sixteen at the time, arrived at the house on Kenilworth at 11:30 or midnight. (TT II, 100-01). She went into the bedroom to watch a movie. She had known petitioner for twelve years, as he had dated her sister. (*Id.*, 102). She identified both petitioner and Boyles as being present in the living room that night. (*Id.*, 103-05). Mr. Stephens, Mr. Tidwell, and Mr. Hayes were also there. (*Id.*, 105).

As Kendrick was watching the movie, petitioner approached her, addressed her by name, and asked her "where was the shit at." (*Id.*, 106). She said she did not know, because she had never been in the house before. He "snatched" her by the skirt and threw her on the floor. He told her to get some boxes out of the closet and to look through them. Petitioner then began to ransack the bedroom. Ms. Kendrick testified that Boyles ultimately brought Stephens, Hayes, and Tidwell back into the bedroom. The gunmen told them to lie on the bed. Tidwell, Hayes, and Ms. Kendrick complied, while Stephens sat on the floor. Both gunmen kept demanding that Stephens tell them

-6-

where the marijuana was.  Kendrick testified that she and the others, except Stephens, were put in the closet.  (*Id.*, 108).

 After she was released from the closet, Kendrick was told to lie on the bed.  Boyles said to turn out the lights, because everyone was going to die.  (TT II, 108-09).  She heard a gunshot.  Kevin Stephens cried out and grabbed his leg.  Kendrick did not know who shot Stephens.  (*Id.*, 110).  Both gunmen continued to demand the drugs and to threaten everyone with death.  (*Id.*, 111).  Boyles took Stephens out of the bedroom and then returned with him, still demanding "where the shit at."  (*Id.*, 112).  Stephens said the other people had nothing to do with this and to leave them alone.  That is when Boyles shot Stephens in the head.  (*Id.*, 113).

 When Stephens was shot, Kendrick was standing close to him, and Hayes and Tidwell were on the bed, all in the same room.  (*Id.*, 117-18).  Boyles next went to Jerean Tidwell and pulled the trigger.  The gun went off, but Kendrick did not believe that Tidwell had been shot, as he was still alive afterwards.  Boyles then went to Hayes and pulled the trigger, but the gun "clicked."  (*Id.*, 118).

 The direct testimony of Jerean Tidwell (TT II, 160-82) essentially corroborated the testimony of Hayes and Kendrick.  The additional details that he offered involved the following.  Tidwell identified petitioner and Boyles as the two men who drew revolvers that night, about twenty minutes after they arrived.  (TT II, 165, 168).  Both defendants demanded drugs and made death threats.  (*Id.*, 169).  He heard the first shot but did not know who the shooter was; he looked back and saw Stephens holding his leg, which was bleeding.  (*Id.*, 171-72).  Both defendants made death threats before and after Stephens was shot in the leg.  (*Id.*, 173-74).  After five to ten minutes, he

-7-

heard a second shot.  He looked back and saw both defendants standing over Stephens.[2]  (*Id.*, 176).

He did not, however, see who shot.  (*Id.*, 177).  When Aimee said, "He's bleeding to death," Tidwell

jumped up, and then heard another shot go off.  (*Id.*, 177).  This shot hit him, so he ran out the door

to a gas station and called the hospital.  (*Id.*, 178).  The bullet had grazed the back of his head.  (*Id.*).

Kenya Campbell, the girlfriend of Hayes at the time, testified briefly that she received

a call from petitioner at 2:00 a.m. the same night.  Petitioner asked her to come and pick him up at

Boyles's house.  (TT II, 299-300).  When she arrived, Boyles was there but petitioner was not.  (*Id.*,

303).  Boyles got into the driver's seat and drove around the corner, picking up petitioner.  (*Id.*, 304).

She "knew something was wrong," as petitioner was sweating and looked "crazy."  (*Id.*, 305).  She

asked them what they did.  It was quiet for a couple of minutes, then petitioner said her boyfriend

(Hayes) had been "whupped down" and that his friend was hurt.  (*Id.*, 305).  She got hysterical and

told them to leave the car.  Boyles said that if she said anything, he would kill her.  (*Id.*, 306).  The

rest of the prosecution's case was devoted to technical testimony from officers and the medical

examiner, such as cause of death, statements made by the witnesses and defendants, and chain of

custody for evidence.

Both defendants testified.  They admitted that they were at the house to purchase

marijuana, but denied having guns and denied having any involvement with the murder or robbery.

The case was submitted to the jury with regard to petitioner on the following charges:

first-degree, felony murder of Mr. Stephens, on an aiding and abetting theory; two counts of assault

with intent to commit murder, regarding Mr. Tidwell and Mr. Hayes, again on an aiding and abetting

---

[2] Tidwell was the only witness to testify that petitioner was in the room when Stephens was shot in the head.

theory; two counts of armed robbery, regarding Mr. Stephens and Mr. Hayes; conspiracy to commit armed robbery; one count of felonious assault by petitioner against Aimee Kendrick; and seven counts of possession of a firearm during the commission of a felony. The jury found petitioner guilty of all charges, except assault with intent to murder Mr. Tidwell. The Oakland County Circuit Court sentenced petitioner to mandatory, nonparolable life imprisonment on the murder conviction, consecutive 20-to-30-year prison terms on all other substantive felonies, and two years' prison terms on each of the seven convictions for felony-firearm. All sentences were to run consecutively. The substantive felony sentences were enhanced by petitioner's status as a fourth habitual felon under Michigan's habitual offender law.

### B.    Appellate Proceedings

Petitioner appealed as of right to the Michigan Court of Appeals. His appellate brief, filed by counsel, raised four questions for review:

I.    IS DEFENDANT-APPELLANT ENTITLED TO A NEW TRIAL WHERE THERE WAS INSUFFICIENT EVIDENCE TO FIND FOR THE FELONY-MURDER CONVICTION AND ASSAULT WITH INTENT TO MURDER CONVICTIONS?

II.    SHOULD DEFENDANT-APPELLANT'S CONVICTION FOR FELONY FIREARM (COUNT 4) BE DISMISSED, WHERE HE WAS FOUND NOT GUILTY OF THE UNDERLYING FELONY?

III.    SHOULD   DEFENDANT-APPELLANT'S   CONVICTIONS   AND SENTENCES FOR THE UNDERLYING OFFENSE OF ROBBERY ARMED AND FELONY FIREARM BE VACATED AS BEING VIOLATIVE OF THE PROTECTIONS AGAINST DOUBLE JEOPARDY?

IV.    IS DEFENDANT-APPELLANT ENTITLED TO RESENTENCING WHERE THE JUDGMENT OF SENTENCE INDICATES ALL SENTENCES, INCLUDING THE MULTIPLE FELONY FIREARM SENTENCES, ARE CONSECUTIVE?

-9-

(Appellant's Brief on Appeal at 1, found in Court of Appeals Record, docket # 23).  The challenge to the sufficiency of the evidence in ground I was based on the assertion that the prosecutor had failed to establish that petitioner had the requisite mental state to support his conviction for aiding and abetting the murder of Kevin Stephens or the assault with intent to murder Kenneth Hayes.  In essence, the brief argued that while petitioner knew Boyles intended to commit an armed robbery, there was insufficient evidence to show that he shared with Boyles the requisite malice necessary to prove murder or assault with intent to commit murder.  The challenge to count 4 was based upon a theory of inconsistent verdicts, as the jury acquitted petitioner of assault with intent to murder Tidwell but convicted him of possessing a firearm during the commission of this offense.  Claim III raised a double jeopardy challenge to petitioner's conviction for both felony murder and the underlying offense of armed robbery.  Finally, claim IV argued that petitioner was entitled to be resentenced because the judgment reflected that all sentences were to be consecutive, whereas state law required that some of the sentences be concurrent.

By unpublished, *per curiam* opinion issued July 20, 2004, the Michigan Court of Appeals rejected petitioner's challenges to the sufficiency of the evidence and to the allegedly inconsistent verdict on count IV.  The appellate court agreed with petitioner that his conviction for both felony murder and the predicate felony of armed robbery violated the state Constitution's prohibition against double jeopardy.  The court therefore vacated petitioner's conviction and sentence for armed robbery, as well as the accompanying felony-firearm conviction.  The court also found in petitioner's favor on claim IV, holding that his sentences for the multiple counts of felony-firearm should be served consecutively but that the sentences for the remaining felony convictions

should be concurrent with each other. *See People v. Daniels*, No. 247558, 2004 WL 1621675 (Mich. Ct. App. July 20, 2004).

Petitioner filed a *pro se* application for leave to appeal to the Michigan Supreme Court raising all four issues asserted in the state Court of Appeals, even the two issues on which petitioner had prevailed. The Oakland County prosecutor filed a cross-application for leave to appeal, asking the state Supreme Court to change state law on the double jeopardy question to allow conviction for both felony murder and the underlying felony. By order issued October 19, 2005, the state Supreme Court denied both applications. Justice Corrigan dissented, indicating that she would grant review on the double jeopardy issue.

Petitioner did not institute any state post-conviction proceedings. On October 2, 2006, petitioner filed his timely application for habeas corpus relief, raising the same four grounds asserted in the state Court of Appeals, including the two issues upon which he had prevailed in the Court of Appeals.

### C.    Applicable Standard

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005)

(citations omitted); *see Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774 (6th Cir. 2008). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009). *De novo* review is restricted to instances where the state court did not address the merits of a claim. In that limited set of circumstances, "there are simply no results, let alone reasoning, to which [the habeas] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Van v. Jones*, 475 F.3d 292, 293 (6th Cir. 2007); *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005).

The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court

may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

"It is important to note, however, that 'an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law.'" *Harbison v. Bell*, 408 F.3d 823, 829 (6th Cir. 2005) (quoting *Williams*, 529 U.S. at 409); *Waddington*, 129 S. Ct. at 831; *Fleming v. Metrish*, 556 F.3d 520, 525 (6th Cir. 2009). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *see Walls v. Kontech*, 490 F.3d 432, 436 (6th Cir. 2007). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410; *see Bell v. Cone*, 535 U.S. at 694; *Keith v. Mitchell*, 455 F.3d 662, 669 (6th Cir. 2006) ("The proper inquiry under the 'unreasonable application' analysis is whether the state court decision was objectively unreasonable and not simply erroneous or incorrect."), *cert. denied*, 549 U.S. 1308 (2007); *Payne v. Bell*, 418 F.3d 644, 653 (6th Cir. 2005) ("A state court decision involves an 'unreasonable application' of clearly established Supreme Court precedent when it correctly identifies the governing legal standard but applies it to the facts before it in an objectively unreasonable manner.") (citations omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. at 412; *Wilson v. Parker*, 515 F.3d at 691; *Ross v. Petro*, 515 F.3d 653, 660 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 906 (2009).  This court may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar.");  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).

The AEDPA standard includes an important temporal limitation.  "'[C]learly established Federal law as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003) (quoting *Williams*, 529 U.S. at 412); *see Fautenberry v. Mitchell*, 515 F.3d 614, 623 (6th Cir.), *cert. denied*, 129 S. Ct. 412 (2008).  Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004) (describing the issue of whether the law was clearly established by Supreme Court precedent as a "threshold inquiry").  "'Federal Courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation.'" *Payne*, 418 F.3d at 656 (quoting *Cone v. Bell*, 543 U.S. at 455).  "The state court decision need not cite Supreme Court precedent, or even reflect awareness of Supreme

Court cases, 'so long as neither the reasoning nor the result of the state court decision contradicts them.'" *Dennis*, 354 F.3d at 517-18 (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

Regardless of the subsection of 2254(d) relied on by the petitioner, AEDPA requires heightened respect for state factual findings. 28 U.S.C. § 2254(e)(1); *see Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence 28 U.S.C. § 2254(e)(1); *Owens v. Guida*, 549 F.3d 399, 404 (6th Cir. 2008); *Ivory v. Jackson*, 509 F.3d 284, 291 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 1897 (2008). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Tucker v. Palmer*, 541 F.3d 652, 665 (6th Cir. 2008).

## Discussion

### I. Sufficiency of the Evidence to Support Petitioner's Convictions for Felony Murder and Assault With Intent to Commit Murder

The evidence clearly showed that Terrill Boyles murdered Kevin Stephens by shooting him once in the head and that Boyles assaulted Kenneth Hayes by pointing a gun at Hayes and pulling the trigger. The jury convicted petitioner of aiding and abetting Boyles in committing these two crimes. Petitioner argues that the evidence was insufficient to support these convictions. Under *Jackson v. Virginia,* 443 U.S. 307 (1979), a habeas petitioner challenging a state court conviction "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. at 324. In examining the sufficiency of the evidence to support a state conviction, this court must give deference to the fact-finder's determination, recognizing "the responsibility of the trier of

fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 319. The evidence must be viewed in the light most favorable to the prosecution. *Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002). This standard applies whether the evidence of guilt was direct or circumstantial. *Id.* The state need not rule out every hypothesis except guilt, nor need the habeas court be persuaded of guilt beyond a reasonable doubt. *See O'Hara v. Brigano*, 499 F.3d 492, 499-500 (6th Cir. 2007); *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove "all elements of the offense charged, and must persuade the fact finder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements." *Sullivan v. Louisiana,* 508 U.S. 275, 277-78 (1993) (internal citations omitted). Therefore, in reviewing the sufficiency of the evidence to support a jury's verdict, this court must "do so 'with explicit reference to the substantive elements of the criminal offense as defined by state law.' " *Parker v. Renico,* 506 F.3d 444, 448 (6th Cir. 2007) (quoting *Jackson,* 443 U.S. at 324 n.16.).

A.    Felony Murder

Under Michigan law, there are two types of first-degree murder. *See* MICH. COMP. LAWS § 750.316. First, the statute proscribes as first-degree murder murder "perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MICH. COMP. LAWS § 750.316. Second, the statute covers murder committed in the perpetration or attempt to perpetrate certain enumerated felonies, including robbery. MICH. COMP. LAWS § 750.316(b). First-degree, premeditated murder is a specific intent crime, requiring proof that a defendant intended to

-16-

kill and that the intent was both deliberate and premeditated. *See People v. Dykhouse*, 345 N.W.2d 150, 151 (Mich. 1984). Felony murder, by contrast, does not require the specific intent to kill; it is a general intent crime. The defendant need have only one of the three mental states (referred to as "malice" in Michigan common law) required for second-degree murder. *See People v. Aaron*, 299 N.W.2d 304, 329 (Mich. 1980). The malice element for murder is satisfied by any one of the following mental states: the intent to kill, the intent to inflict great bodily harm, or commission of an act in wanton and willful disregard of the likelihood that the natural consequence of the act will be death or great bodily harm. *Dykhouse*, 345 N.W.2d at 151; *accord People v. Langworthy*, 331 N.W.2d 171, 179 (Mich. 1982).

To convict a criminal defendant on an aiding and abetting theory, the prosecutor is required to show the commission of the underlying felony, that the defendant assisted the perpetrator in committing the felony, and that the defendant either intended to commit the crime or he knew when he gave assistance that the other person intended to commit the crime. *See People v. Smielewski*, 596 N.W.2d 636, 642 (Mich. Ct. App. 1999). Aiding and abetting encompasses "all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds that might support, encourage or incite the commission of a crime." *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999). The requisite intent for conviction of a crime as an aider and abetter is "that necessary to be convicted of the crime as a principal." *People v. Mass*, 628 N.W.2d 540, 548 (Mich. 2001). "Under an aiding and abetting theory, the State must prove either that [petitioner] held the requisite intent for second-degree murder or had knowledge that [the co-defendants] held that intent." *Hill v. Hofbauer*, 337 F.3d 706, 719 (6th Cir. 2003) (habeas review of Michigan felony murder conviction). The aider-and-abetter's intent, or knowledge of the principal's intent, may be

inferred from circumstantial evidence. *See Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (applying Michigan law). These circumstances can include a close association between the defendant and the principal, defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. *Carines*, 597 N.W.2d at 135. "An aider and abettor of a robbery must know of his cohort's intent to kill the victim, or at least his intent to physically harm the victim, before he can be found to have aided and abetted the murder as well. Such intent can be inferred from the aider and abettor's knowledge that his cohort possesses a weapon." *Hill*, 337 F.3d at 719-20.

The only element of the prosecutor's case challenged by petitioner in the Michigan Court of Appeals or in his habeas corpus petition was his requisite mental state. In reviewing this claim, the Michigan Court of Appeals enunciated the appropriate federal standard, as adopted by the Michigan courts: whether the evidence, viewed in a light most favorable to the prosecution, would allow any rational factfinder to find the essential elements of the crime to be proven beyond a reasonable doubt. The court accurately recited the elements of felony murder under state law, as well as the elements necessary to establish aiding and abetting. The court analyzed the issue as follows:

> Ample evidence was adduced at trial to support defendant's felony murder conviction under an aiding and abetting theory. A witness to the shootings testified that defendant and codefendant came to Stephens' house together, and once inside, they both pulled guns, demanded "the stuff," and threatened to kill everyone if they did not get what they wanted. An occupant of the house testified that defendant shot Stephens in the leg, and, after more threats on Stephens' life, codefendant shot Stephens in the back of the head, killing him. The fact that defendant threatened the life of the occupants of the house and used a weapon to shoot Stephens in the leg shows his intent to kill or inflict great bodily harm. By virtue of codefendant's instruction to defendant to kill everyone, defendant had knowledge of codefendant's intent to kill, if necessary, to get what he was after. Defendant gave aid and encouragement by shooting Stephens in the leg, presumably to get him to tell where "the stuff" was located, by ransacking Stephen's [sic] bedroom and carrying away

goods, and by helping to corral the occupants of the house.  The fact that defendant was not present in the room when codefendant shot and killed Stephens does not negate the fact that defendant gave aid and encouragement to codefendant during the entire joint endeavor.

*People v. Daniels*, 2004 WL 1621675 at * 2.

Because the Michigan Court of Appeals ruled directly on this claim, review of the issue must be conducted under the AEDPA standard, which the Sixth Circuit has recently described as "very deferential."  *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 1652 (2008); *see Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) ("[T]he law commands deference at two levels in this case:  [f]irst, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*, second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA.").  Review of challenges to the sufficiency of the evidence under this standard proceeds under the "unreasonable application" prong of the statute.  *See Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008); *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007).  In other words, such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of the standard of *Jackson v. Virginia*.  *See Eady v. Morgan*, 515 F.3d 587 (6th Cir. 2008); *Riley v. Berghuis*, 481 F.3d 315, 320-21 (6th Cir. 2007).  Review in such cases "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson*, 215 F. App'x at 436.  This standard presents a "very difficult hurdle" for the habeas petitioner.  *Id.* at 437.

The decision of the Michigan Court of Appeals is not an unreasonable application of the *Jackson v. Virginia* standard.  The state appellate court applied the correct legal standard and

-19-

made findings fully supported by the evidence.  The court even gave the benefit of the doubt to petitioner by accepting the contention that he was not present in the room when Boyles shot and killed Stephens, as recounted by Hayes and Kendrick, even though Tidwell testified that petitioner was indeed present.  The Michigan Supreme Court has long made it clear that a defendant need not participate in the actual killing to be guilty of felony murder.  *Carines*, 597 N.W.2d at 141.  "To the contrary, our case law establishes that, in certain circumstances, a defendant may be held responsible for the actions of a co-felon."  *Id.*  All that is necessary is that the defendant have the requisite mental intent and that the defendant "have performed acts or [given] encouragement that assisted the commission of the crime."  *Id.* at 141-42.  The *Carines* court held that a jury can infer aiding and abetting from the fact that the defendant participated in the underlying robbery offense and that the killing was within the scope of the robbers' common plan.  *Id.* at 136.  "The jury could thus have inferred that defendant, if not acting as a principal, aided and abetted the homicide by participating in the robbery in which the victim was killed."  *Id.*  The intent to commit the robbery, standing alone, would be insufficient, however.  *Id.*

The record amply supports the jury's finding both that petitioner acted with malice and that he performed acts or gave encouragement that assisted in the commission of the murder of Kevin Stephens.  The evidence supported a finding, at the very least, that petitioner intended to inflict great bodily harm on Stephens or that he acted in wanton and wilful disregard of the likelihood that the natural consequences of his act would be death or great bodily harm.  Either one of these mental states is sufficient to establish the element of malice necessary for a murder conviction.  *See Dykhouse*, 345 N.W.2d at 151.  Petitioner was first to discharge his gun, shooting Stephens in the leg.  Although petitioner argues strenuously that this was not a fatal wound, this fact

-20-

is beside the point.  Certainly, shooting an unarmed man in the leg shows the intent to inflict great bodily harm.  Furthermore, the evidence clearly supports a common plan by petitioner and Boyles to commit the armed robbery, to repeatedly threaten the victims with their lives, and to discharge their firearms in furtherance of the armed robbery.  These facts, as well as those relied upon by the Court of Appeals, amply establish petitioner's liability for felony murder on an aiding-and-abetting theory under Michigan law, and the jury was justified in so finding beyond a reasonable doubt.

Petitioner's reply brief (docket # 27) argues for the first time that the evidence demonstrated that he had abandoned the crime long before Boyles killed Stephens.  He asserts that the evidence "tends to show" that he did not threaten or shoot anyone and already was "long gone and had abandoned any further participation" when the killing occurred.  (p. 2).  Rather than viewing all the evidence in a light most favorable to the prosecution, petitioner's argument presents a complete distortion of the record in his favor.  The prosecution presented eyewitness testimony that petitioner threatened all victims with a gun and with threats of death.  (Hayes, TT II, 30; Kendrick, TT II, 106-07; Tidwell, TT II, 173-74).  Hayes squarely testified that he saw petitioner hit Stephens in the head (TT II, 21-22) and shoot Stephens in the leg.  (TT II, 29).  Tidwell testified that immediately after Stephens was fatally shot, he turned and saw *both* defendants standing over him with guns.  (TT II, 176-77).  Although other evidence was inconsistent, the jury was entitled to credit this testimony.  Furthermore, neither petitioner nor his counsel presented any abandonment theory to the jury at trial.  Petitioner testified that neither he nor Boyles had anything to do with the robbery or murder.  (TT III, 194-95, docket # 19).  Therefore, there was no evidence upon which the jury could have based a finding for petitioner on the unasserted affirmative defense of abandonment, on

-21-

which petitioner bore the burden of proof.  *See People v. Akins*, 675 N.W.2d 863, 873 (Mich. Ct. App. 2003); *People v. Cross*, 466 N.W.2d 368, 369 (Mich. Ct. App. 1991).

The evidence was more than sufficient to establish all elements of felony murder on an aiding-and-abetting theory, including the existence of the requisite mental state.  Petitioner's afterthought defense of abandonment, which was never raised or supported at trial, does not change this result.  His first habeas claim is therefore meritless.

### B.   Assault With Intent to Murder

The jury also convicted petitioner of assault with intent to murder Kenneth Hayes, again on an aiding-and-abetting theory.[3]  The evidence clearly established that Boyles, having just shot Stephens in the head and barely missed Tidwell, turned his gun towards Hayes.  Only a misfire prevented a second homicide.

Again, this issue was expressly raised on direct appeal and was resolved by the Michigan Court of Appeals, as follows:

> There was also sufficient evidence to support defendant's conviction of assault with intent to murder Kenneth Hayes.  There was testimony at trial that, after shooting Stephens, codefendant pointed the gun at Hayes, who was lying on the bed, and pulled the trigger.  This testimony established that codefendant assaulted Hayes with the intent to murder him.  As stated above, defendant's participation in the armed robbery of the occupants of Stephens' house in the face of codefendant's threats to kill everybody, defendant's threats to kill the occupants, his use of a weapon during the robbery and his shooting of Stephens in the leg was sufficient for a jury to infer that defendant had knowledge that codefendant intended to kill on [sic] the occupants of the house, including Hayes, and that defendant aided and abetted codefendant in this crime.

*People v. Daniels*, 2004 WL 1621675, at * 2.

---

[3] The jury acquitted petitioner of aiding and abetting Boyles in his assault on Jerean Tidwell.

Again, because the Michigan Court of Appeals expressly considered this constitutional claim, its decision is entitled to deference under AEDPA and can only be overturned if it represents an unreasonable application of the standard of *Jackson v. Virginia*. *See Tucker*, 541 F.3d at 656. The state court decision easily withstands review under this standard. The Michigan Court of Appeals enunciated the correct test under *Jackson v. Virginia*, and its findings of fact were amply supported in the record. As the court correctly observed, petitioner's participation in the armed robbery in the face of his co-defendant's threats to kill everyone, petitioner's own threats to kill the occupants, his brandishing of a firearm, and his previous shooting of Stephens all allowed the jury to infer petitioner's knowledge of and participation in Boyles' efforts to use deadly force against all the occupants of the house, including Hayes. "Moreover, by engaging in an armed robbery with his co-felons, defendant set in motion a force likely to cause death or great bodily harm. . . . Even if defendant had not intended to kill the victim when he entered the parking garage, the nature of the killing established that it was neither accidental nor done without malice. Defendant at the very least became aware of his cohort's intent during the events in question." *Carines*, 597 N.W.2d at 136-37. Likewise, even if petitioner was unaware of his co-defendant's intent to use deadly force when petitioner entered the house on Kenilworth, the subsequent threats, assaults, and gun play make petitioner responsible for the natural and foreseeable consequences of his acts. *Id.*

The decision of the Michigan Court of Appeals, affirming petitioner's convictions for felony murder and assault with intent to commit murder on an aiding-and-abetting theory were not unreasonable applications of Supreme Court precedent. Consequently, petitioner's first claim must be rejected under the AEDPA standard.

## II.    Inconsistent Jury Verdicts

Petitioner's next claim is that his acquittal on the charge of assault with intent to murder Jerean Tidwell was inconsistent with the jury's decision to convict petitioner for possession of a firearm during the commission of that assault.  On direct review, the Michigan Court of Appeals rejected this claim on the basis of state law, which allows a conviction for a felony-firearm offense as long as there is proof that the defendant committed the underlying offense, even where the defendant is not convicted of the underlying felony.

To prevail on his habeas corpus claim, petitioner is first required to invoke a clearly established principle of federal law as enunciated by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).  This court may consider only the "clearly established" holdings, and not the dicta, of Supreme Court cases.  *See Williams*, 529 U.S. at 412.  In the present case, petitioner cannot point to any decision of the United States Supreme Court to support his argument that his felony-firearm conviction must be vacated as inconsistent with the jury's determination on the underlying assault charge.

Although the Michigan Court of Appeals relied on Michigan law in reaching its determination, the legal standard it applied is completely consistent with the holdings of the United States Supreme Court on this issue.  The Supreme Court has long held that inconsistency in a verdict is not a sufficient basis for habeas corpus relief.  *Harris v. Rivera*, 454 U.S. 339, 345 (1981).  The court has squarely held that "a criminal defendant convicted by a jury on one count [may] not attack that conviction because it is inconsistent with the jury's verdict of acquittal on another count."  *United States v. Powell*, 469 U.S. 57, 58 (1984) (inconsistent verdicts provide no basis for reversal; conviction for compound crime upheld where defendant was acquitted of predicate crime) (citing

*Dunn v. United States*, 284 U.S. 390 (1932)).  The Supreme Court has never held that a state conviction is unconstitutional because it conflicts with inconsistent verdicts of acquittal on other charges.  In fact, the law is completely to the contrary.  *See Powell*, 469 U.S. at 58.  The determination of the Michigan Court of Appeals is therefore fully consistent with controlling United States Supreme Court precedent.  Petitioner's second claim for relief must therefore be denied.

### III.    Double Jeopardy

On direct appeal, petitioner argued that state double jeopardy principles precluded his conviction for both felony murder and the underlying predicate felony of armed robbery.  The state Court of Appeals agreed with this contention as a matter of state constitutional law.  The court therefore vacated petitioner's conviction and sentence for armed robbery, as well as the accompanying felony-firearm conviction.  *People v. Daniels*, 2004 WL 1621675, at * 3.  Petitioner nevertheless persists in his argument that his rights were somehow violated.  His application for habeas corpus relief on the basis of an error that was fully corrected in the state appellate system is meritless.

### IV.    Sentencing Error

Finally, petitioner seeks habeas corpus relief on the basis that the trial court improperly ordered all sentences to run consecutively.  On direct appeal, petitioner's counsel challenged his sentences on this basis under state law.  Again, the state Court of Appeals agreed, remanding the case for correction of petitioner's judgment to show that certain sentences would run concurrently and not consecutively.  *People v. Daniels*, 2004 WL 1621675, at * 3.  Petitioner cannot

possibly be entitled to habeas corpus relief on this state-law ground, as the state Court of Appeals

corrected the error on direct review.

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition, as amended,

be denied.

Dated:   March 31, 2009                         /s/  Joseph G. Scoville
                                                United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within
ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All
objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file
timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474
U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030
(1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).